**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Carol Wyatt, Individually and On Behalf of All Others Similarly Situated, | Case No.:  CV-19-1646-CBM-MAA(x) |
| Plaintiffs, | **ORDER RE:  DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT SECOND AMENDED CLASS ACTION COMPLAINT  [32]** |
| v. | |
| Mattel, Inc., *et al*., | |
| Defendants. | |

The matter before the Court is Defendants Mattel, Inc., Ynon Kreiz, and Joseph J. Euteneuer's (collectively, "Defendants'") Motion To Dismiss Amended Class Action Complaint Second Amended Class Action Complaint (the "Motion").  (Dkt. No. 32.)

## I.    BACKGROUND

This is a putative securities class action brought by Plaintiffs Carol Wyatt, Joseph Stella and Vickie Blair (collectively, "Plaintiffs") on behalf of themselves and "all persons or entities that purchased or otherwise acquired Mattel securities between February 7, 2019 and February 15, 2019, inclusive."  (Dkt. No. 31, Amended Class Action Complaint ("ACAC") ¶ 2.)[1]  The ACAC asserts two

---

[1] The original complaint was filed by Plaintiff Wyatt.  Pursuant to the parties' stipulation, the Court appointed Plaintiffs Wyatt, Blair, and Stella as lead

1

causes of action:  (1) violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Act") and Rule 10b-5 against all Defendants; and (2) violation of Section 20(a) of the Act against Individual Defendants Kreiz and Euteneuer.[2] Plaintiffs allege they purchased Mattel securities at artificially inflated prices and were damaged when Defendants' alleged materially false and misleading statement and omissions about Mattel were revealed to investors on February 15, 2019, which caused the price of the securities to decline significantly.  (*Id.* ¶ 75.)

## II.    LEGAL STANDARD

### A.    Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Dismissal of a complaint can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A formulaic recitation of the elements of a cause of action will not suffice. *Twombly*, 550 U.S. at 555.  To conform to Federal Rule of Civil Procedure 8, the plaintiff must make more than "an unadorned, the-defendant-harmed me" accusation. *Iqbal*, 556 U.S. at 678.  Labels and conclusions are insufficient to meet the plaintiff's obligation to provide the grounds of his or her entitlement to relief. *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*  If a complaint cannot be cured by additional factual allegations, dismissal without leave to

plaintiffs, approved their selection of co-lead counsel, and permitted Plaintiffs to file an amended complaint.  (Dkt. No. 29.)

[2] Defendant Kreiz is the CEO of Mattel, Inc. and Chairman of Mattel's Board of Directors.  Defendant Euteneuer is the CFO of Mattel, Inc.

amend is proper.  *Id*.

On a motion to dismiss for failure to state a claim, courts accept as true all well-pleaded allegations of material fact and construes them in a light most favorable to the non-moving party.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031–32 (9th Cir. 2008).  A court may only consider the allegations contained in the pleadings, exhibits attached to or referenced in the complaint, and matters properly subject to judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**B.       Pleadings Requirements for Section 10(b) and Rule 10b-5 Claims**

At "the pleading stage, a complainant stating claims under Section 10(b) and Rule 10b-5 must satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b) and the [Private Securities Litigation Reform Act of 1995]."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

Rule 9(b) governs all claims sounding in fraud, and requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Thus, as applied to securities claims alleging fraud, Rule 9(b) requires the false statement/omission be pled with particularity.  Moreover, the Ninth Circuit has held that "Rule 9(b) applies to all elements of a securities fraud action, including loss causation."  *Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014).

The Private Securities Litigation Reform Act of 1995 ("PSLRA") heightened the pleading standard applicable to putative class actions alleging securities fraud on the basis of misleading statements or omissions by adding a requirement that a plaintiff plead intent to defraud, otherwise known as scienter, with particularity.  15 U.S.C. § 78u-4(b)(1) and (2).  Section 78u-4(b) of Title 15, regarding "requirements for securities fraud actions", provides, in relevant part:

3

(1)    Misleading statements and omissions.   In any private action arising under this title in which the plaintiff alleges that the defendant--

(A)    made an untrue statement of a material fact; or

(B)    omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint *shall state with particularity all facts on which that belief is formed.*

(2)    Required state of mind. In any private action arising under this title in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this title, *state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.*

(Emphasis added.)

Thus, Rule 9(b) and the PSLRA impose a burden on the plaintiff to plead falsity and scienter with particularity.  *See Metzler Invest. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).  With respect to falsity, the Ninth Circuit has reasoned that in "requiring specificity, [the PSLRA] prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful."  *Id.* at 1061 (emphasis in original).  As to scienter, the Ninth Circuit has reasoned that "in order to state a claim for securities fraud that complies with the dictates of the PSLRA, the complaint must raise a 'strong inference' of scienter – *i.e.*, a strong inference that the defendant acted with an intent to deceive, manipulate or defraud."  *Id.*; *see also Zucco Partners*, 552 F.3d at 990.

Accordingly, Plaintiffs must plead falsity, scienter, and loss causation with particularity to satisfy the requirements of Rule 9(b) and the PSLRA.

## III.   DISCUSSION

**A.      Request for Judicial Notice**

Defendants request that the Court take judicial notice of the following:

1.      Ex. 1:  Transcript: MAT – Q3 2017 Mattel Inc Earnings Call dated October 26, 2017;

2.      Ex. 2:  Transcript: MAT – Q4 2017 Mattel Inc Earnings Call dated February 1, 2018;

3.      Ex. 3:  Transcript: Toy Fair Analyst Meeting dated February 16, 2018;

4.      Ex. 4:  Excerpts from the Mattel, Inc. 2017 Form 10-K Annual Report dated February 27, 2018;

5.      Ex. 5:  Transcript: MAT – Q3 2018 Mattel Inc Earnings Call dated October 25, 2018;

6.      Ex. 6:  Mattel, Inc. Form 8-K Press Release dated February 7, 2019;

7.      Ex. 7:  Transcript: MAT – Q4 2018 Mattel Inc Earnings Call dated February 7, 2019;

8.      Ex. 8:  Transcript: Toy Fair Analyst Meeting dated February 15, 2019;

9.      Ex. 9:  Jefferies Analyst Report for Mattel dated October 26, 2018;

10.      Ex. 10:  Citi Research Analyst Report for Mattel dated February 7, 2019; and

11.      Ex. 11:  Bank of America Merrill Lynch Analyst Report for Mattel dated February 8, 2019.

(Dkt. No. 33 ("RJN").)[3]

Exhibits 1, 2, and 5-8 are incorporated by reference into the ACAC, and therefore the Court may consider them for purposes of ruling on the instant Motion to dismiss.  Accordingly, taking judicial notice of Exhibits 1, 2, and 5-8 is unnecessary.

The Court may take judicial notice of Exhibit 3, and 9-11 to consider what statements were made, but not for the truth of the contents therein.[4]  The Court can

---

[3] Plaintiffs did not file an opposition to Defendants' request for judicial notice.

[4] *See, e.g.*, *Ardolino v. Mannkind Corp.*, 2016 WL 4505172, at *4 (C.D. Cal. Aug. 23, 2016); *In re Century Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964, 980 (N.D. Cal. 2010); *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1111 (N.D. Cal.

take judicial notice of Exhibit 4 because it is a publicly filed document available on a government website and its authenticity cannot be reasonably questioned.[5]

Accordingly, the Court denies as moot Defendants' Request for Judicial Notice as to Exhibits 1, 2, and 5-8, and grants Defendants' Request for Judicial Notice as to Exhibits 3, 4, and 9-11.

**B.      Section 10(b) of the Act and Rule 10b-5 (First Cause of Action)**

Plaintiff alleges Defendants violated Section 10(b) of the Act and Rule 10b-5.  The elements of a securities fraud action pursuant to Section 10(b) and Rule 10b-5 are:  (1) a material misrepresentation or omission of fact, (2) scienter; (3) a connection with the purchase or sale of a security; (4) transaction and loss causation; and (5) economic loss.  *Zucco Partners*, 552 F.3d at 990; *In re Daou Sys. Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005).

**(1)      Falsity**

To assert a Section 10(b) and Rule 10b-5 claim, Plaintiffs must plead falsity with particularity by "specify[ing] each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1); *see also Zucco Partners,* 552 F.3d at 990-91.  Plaintiffs must plead "specific facts indicating why" the statements at issue were false, and a "litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet this standard."  *Metzler*, 540 F.3d at 1061, 1070-71; *Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001).  To survive a motion to dismiss, the complaint must specify each false or misleading statement made by each particular defendant, the reasons

---

2009).

[5] *See* Fed. R. Evid. 201; *see also Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008); *Dreiling v. Am. Exp. Co.,* 458 F.3d 942, 946 n. 2 (9th Cir. 2006).

why each statement is false or misleading. 15 U.S.C. § 78u-4(b)(1). Moreover, to be actionable, statements must be false "at [the] time by the people who made them." *Larkin,* 253 F.3d at 430; 15 U.S.C. § 78u-4(b)(1). "The fact that [a] prediction proves to be wrong in hindsight does not render the statement untrue when made." *In re VeriFone Sec. Litig.,* 11 F.3d at 871.

Here, the ACAC alleges Defendants made misleading statements or omissions regarding three topics: (1) Mattel's $100 million investment in 2019; (2) Mattel's 2019 projections for its Barbie and Hot Wheels Brands; and (3) Mattel being "well positioned for 2019." Defendants argue Plaintiffs fail to plead falsity with sufficient particularity as to each of these topics.

> ### a.    $100 million Investment in 2019

Plaintiffs allege that on February 15, 2019, Defendants "shocked the market by disclosing for the first time that Mattel would be investing an ***additional*** $100 million in programs to help restore the Company's profitability on top of the Structural Simplification program," which caused the price of Mattel's shares to drop more than 18% when the market closed on February 15, 2019. (ACAC ¶¶ 11, 12 (emphasis added).) Specifically, on the February 15, 2019, Defendant Euteneuer stated during the Toy fair Analyst Meeting: "This year, we expect to increase our investment spend to approximately $100 million, with over 90% being recognized as operating expenses." (RJN Ex. 8-176 (emphasis added).)

The ACAC alleges Defendants made the following statements/omissions regarding the $100 million investment in 2019:

| # | ACAC ¶ | STATEMENT | SOURCE |
|---|--------|-----------|--------|
| 1. | ¶ 58 | "Achieved $521 million of run-rate cost savings exiting 2018 and **expect to** exceed cumulative $650 million run-rate cost savings target **exiting 2019**." (Emphasis added.) | press release, filed with the SEC as a Form 8-K, entitled, "Mattel Reports Full Year And Fourth Quarter 2018 Financial Results" |
| 2. | ¶ 59 | Defendant Euteneuer: "Our key financial metrics, including gross margin, operating income, and earnings per share, are all | press release, filed with the SEC as a Form 8-K, entitled, "Mattel Reports Full Year |

7

| | | moving in the right direction and our cost savings initiative is **ahead of plan** entering 2019." (Emphasis added.) | And Fourth Quarter 2018 Financial Results" |
|---|---|---|---|
| 3. | ¶ 60 | Defendant Kreiz: "In terms of restoring profitability, we are on track with our Structural Simplification program. Exiting 2018, we achieved $521 million of run rate cost savings. **We now expect to exceed our overall cost savings target of $650 million exiting 2019.**" (Emphasis added.) | conference call with analysts and investors to discuss its 4Q18 and FY18 financial results and held an earnings conference call |
| 4. | ¶ 61 | Defendant Euteneuer: "Now let me provide an update on our Structural Simplification cost savings program. As Ynon mentioned, **we are on-track to exceed our $650 million targeted run rate exiting 2019.**" (Emphasis added.) | conference call with analysts and investors to discuss its 4Q18 and FY18 financial results and held an earnings conference call |

Plaintiffs allege these statements regarding Mattel's targeted run rate and cost savings for 2019 were materially false and/or misleading and/or omitted to state material facts because when the statements were made:

(1)     Defendants "failed to disclose the adverse fact that Defendants had to make an additional $100 million investment in 2019 to help restore profitability and thus, the Company's cost savings program, the Structural Simplification program, was not actually on track, let alone exceeding expectations." (ACAC ¶ 62); and

(2)     "Defendants were aware that Mattel would spend $100 million in 2019 investment spend, primarily related to IT transformation initiatives, in order to help restore profitability. In spite of this, Defendants misleadingly touted the success of cost savings program that sought to improve profitability – the Structural Simplification program – without disclosing the need to spend an additional $100 million." (*Id*. ¶ 57.)

Defendants argue Plaintiffs' securities claims re: the $100 million investment based on Defendants statements regarding the "$650 million targeted run rate" are protected by the PSLRA's safe harbor for forward-looking statements. The PSLRA's safe harbor provision states in relevant part that:

a person ... shall not be liable with respect to any **forward-looking statement**, whether written or oral, if and to the extent that—
(A) the forward-looking statement is—
(i) **identified as a forward-looking statement, and is accompanied by meaningful cautionary statements** identifying important factors that could cause actual

8

results to differ materially from those in the forward-looking statement; or

(ii) immaterial; or

(B) the plaintiff fails to prove that the forward-looking statement—

(i) if made by a natural person, was made *with actual knowledge by that person* that the statement was false or misleading; or

(ii) if made by a business entity;[,] was—

(I) made by or with the approval of an executive officer of that entity; and

(II) made or approved by such officer with actual knowledge by that officer that the statement was false or misleading.

15 U.S.C. § 78u–5(c)(1) (emphasis added).  "[I]f a forward-looking statement is identified as such and accompanied by meaningful cautionary statements, then the state of mind of the individual making the statement is irrelevant, and the statement is not actionable regardless of the plaintiff's showing of scienter."  *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010).  If, however, a forward-looking statement is not identified as such or is unaccompanied by meaningful cautionary statements, then the statement is actionable only if the plaintiff proves that the forward-looking statement "was made with actual knowledge by that person that the statement was false or misleading."  15 U.S.C. § 78u–5(c)(1)(B).

First, the Court must determine whether Defendants' alleged false/misleading statements are forward-looking.  A forward-looking statement is "any statement regarding (1) financial projections, (2) plans and objectives of management for future operations, (3) future economic performance, or (4) the assumptions 'underlying or related to' any of these issues."  *No. 84 Employer–Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003) (citing 15 U.S.C. § 78u5(i)).

Defendants' statements that they "expect to" exceed their cost savings target "exiting 2019" (ACAC ¶¶ 58, 60) are forward-looking statements because they are

9

financial projections for Mattel for the end of 2019.[6] Whether Defendants' statements of being "ahead of plan" and "on-track" regarding its cost savings and Mattel's "targeted run rate" for 2019 are forward-looking statements is a closer call. Some courts have found statements regarding being "on track" to meet financial goals are forward-looking statements,[7] whereas other courts have found statements regarding being "on track" and "on plan" are not forward-looking because they reflect current (rather than future) business conditions.[8] Here, the Court finds that while the phrases "on plan" and "on track" sound in the present tense, they refer to Mattel's future financial goals and are therefore forward-looking.[9]

Having found Defendants' statements are forward-looking, the Court must determine whether the statements were accompanied by meaningful cautionary statements so that they are protected under the PSLRA's safe harbor provision.

[6] *See* 15 U.S.C. § 78u–5(i)(1)(A) (forward-looking statement is "a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items"); *see also No. 84 Employer–Teamster Joint Council Pension Trust Fund*, 320 F.3d at 936; *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014).

[7] *See Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543, 547 (9th Cir. 2018); *Wochos v. Tesla, Inc.*, 2018 WL 4076437, at *5 (N.D. Cal. Aug. 27, 2018); *Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1150 (C.D. Cal. 2018); *M & M Hart Living Tr. v. Glob. Eagle Entm't, Inc.*, , 2017 WL 5635424, at *2 (C.D. Cal. Aug. 20, 2017); *Guangyi Xu v. ChinaCache Int'l Holdings Ltd.*, 2017 WL 114401, at *6 (C.D. Cal. Jan. 9, 2017).

[8] *See Pub. Employees Ret. Sys. of Mississippi v. Qualcomm, Inc.*, 773 F. App'x 987, 988 (9th Cir. 2019); *Bielousov v. GoPro, Inc.*, 2017 WL 3168522, at *5 (N.D. Cal. July 26, 2017); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1234 (S.D. Cal. 2010); *In re Secure Computing Corp. Sec. Litig.*, 184 F. Supp. 2d 980, 990 (N.D. Cal. 2001).

[9] *See Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 255 (3d Cir. 2009) (rejecting contention that statements including phrases "on track" and "position us" reflected "current fact," holding such statements were forward-looking because they "cannot meaningfully be distinguished from the future projection of which they are a part"); *Waterford*, 321 F. Supp. 3d at 1150–51 (noting that although statement regarding being on "track" was based on information available to the speaker at that time, such "reliance on present conditions of a company to make a projection is 'implicit in any forward-looking statement' protected by the PSLRA safe harbor provision") (citing *M & M Hart Living Tr. v. Glob. Eagle Entm't, Inc.*, , 2017 WL 5635424, at *11 n.5).

Here, the press release which Plaintiffs base their claim regarding the $100 million investment included the following disclosure:

> This press release contains a number of forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995. The use of words such as "anticipates," "expects," "intends," "plans," "confident that" and "believes," among others, generally identify forward-looking statements. These forward-looking statements are based on currently available operating, financial, economic and other information, and are subject to a number of significant risks and uncertainties. A variety of factors, many of which are beyond our control, could cause actual future results to differ materially from those projected in the forward-looking statements.  . . .[10]

(RJN, Ex. 6.)   Moreover, Defendants made the following disclaimer at the beginning of the February 7, 2019 conference call with analysts and investors:

> Before we begin, I'd like to remind you that certain statements made during the call may include forward-looking statements relating to the future performance of our business, brands and product lines. These statements are based on currently available information, and they are subject to a number of significant risks and uncertainties that could cause our actual results to differ materially from those projected in the forward-looking statements.  We describe some of these uncertainties in the Risk Factors section of our 2017 annual report on Form 10-K, our 2018 quarterly report on Form 10-Q, our earnings release and the presentation accompanying this call, in other filings we make with the SEC from time to time as well as in our other public statements. Mattel does not update forward-looking statements and expressly disclaims any obligation to do so, except as required by law.

(*Id*. Ex. 7.)

/ / /

/ / /

/ / /

---

[10] The press release also identified factors that could cause a change in the projections in the forward-looking statements.  (*See* RJN, Ex. 6.)

11

In Mattel's 2017 Form 10-K Annual Report dated February 27, 2018, Mattel stated it "may be unable to realize the anticipated cost savings from its previously announced cost savings plan or may incur additional and/or unexpected costs in order to realize them." (*Id*. Ex. 4.)[11]  Therefore, the cautionary language provided by Defendants in the press release and the February 7, 2019 conference call are sufficient to render Defendants' forward-looking statements exempt under the PSLRA's safe harbor provision. *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010).[12]

> ### b.    2019 Projections for Barbie and Hot Wheels Brands

Plaintiffs also allege Defendants made the following false and misleading statements/omissions regarding 2019 projections for Mattel's Barbie and Hot Wheels brands during an earnings conference call on February 7, 2019:

---

[11] Mattel further states in the 2017 Form 10-K Annual Report:

> Mattel is implementing a series of cost savings initiatives . . .. Mattel expects to incur one-time, non-recurring costs to achieve such cost savings, including certain costs during 2018 and 2019. There can be no assurance that Mattel will be able to realize the anticipated cost savings from its previously announced cost savings plan in the amounts or within the anticipated timeframes or at all. In addition, any cost savings that Mattel realizes may be offset, in whole or in part, by reductions in net sales or through increases in other expenses. Failure to realize the expected cost savings from its proposed cost savings plan could have an adverse effect on Mattel's financial results and prospects. The amounts of anticipated cost savings and anticipated expenses related thereto are based on Mattel's current estimates, but they involve risks, uncertainties, assumptions and other factors that may cause actual results, performance or achievements to be materially different from those described herein. . . .  [T]here can be no assurance that the anticipated cost savings will be realized or that the impact of the efforts to achieve such cost savings will not be significantly different than currently anticipated. Mattel undertakes no obligation to update or otherwise revise or reconcile its expectations regarding its cost savings efforts whether as a result of new information, future events or otherwise.

[12] The parties disagree as to whether the $100 million investment for 2019 was previously disclosed.  Because the Court finds Defendants' alleged statements/omissions regarding the $100 million investment for 2019 are forward-looking statements protected by the PSLRA's safe harbor provision, the Court does not reach the issue of whether the $100 million investment for 2019 was previously disclosed.

12

| # | ACAC ¶ | STATEMENT | SOURCE |
|---|--------|-----------|--------|
| 1. | ¶¶ 51, 64 | Defendant Kreiz: "In terms of regaining top-line growth, *Barbie and Hot Wheels continued their momentum throughout the year.* We executed well in our two largest regions, North America and Europe, and maintained our strength in Latin America and Global Emerging Markets excluding China. *As a result of this performance, we are proud to say that we recaptured our leadership position as the #1 global toy company in 2018, according to NPD.*" (Emphasis in original.) | earnings conference call on February 7, 2019 |
| 2. | ¶¶ 51, 64 | Defendant Kreiz: "Now I will walk through our brand and regional results. In terms of brand highlights, *2018 was a great year for Barbie, with sustained growth and continued momentum globally.* Barbie worldwide gross sales were up 15%, both for the quarter and the full year in constant currency. This marked the fifth consecutive quarter of year over-year growth for the brand and the highest full year gross sales in the last 5 years. Global POS continued to be strong and was up mid-single digits in the fourth quarter and up double digits for the full year. The brand delivered sales and POS growth in every region for the full year. With this level of performance, Barbie was the #1 global fashion doll property in 2018, according to NPD. *We look forward to celebrating her 60th anniversary throughout 2019 with a number of exciting product launches and events.*" (Emphasis in original.) | earnings conference call on February 7, 2019 |
| 3. | ¶¶ 51, 64 | Defendant Kreiz: "*Hot Wheels worldwide gross sales were up 12% in the quarter and 9% for the year and reached its highest annual sales in its 50-year history.* Global POS was up low-single digits in the quarter and up high-single digits for the full year. POS for the full year also grew in every region. According to NPD, it was the #1 property globally in the vehicles supercategory in 2018." (Emphasis in original.) | earnings conference call on February 7, 2019 |
| 4. | ¶¶ 51, 64 | Defendant Euteneuer: "*Our fourth quarter demonstrated our ability to consistently* | earnings conference call on February 7, 2019 |

| | | *execute on a quarter-by-quarter basis. We had strong results in both fourth quarter and the full year. Our full year resulted exceeded expectation on both the top and the bottom line.* Starting with the top-line, gross sales in the quarter were down 9% year-over-year in constant currency, driven by a negative 8% impact from Toys "R" Us, and a negative 2% impact from the slowdown in our China business. As expected, POS for Mattel was down similarly for the quarter as consumers transitioned from Toys "R" Us to other retailers. For the full year, gross sales exceeded expectations, declining 7% year over-year in constant currency. We finished the year with retail inventory down mid-single digits globally year-over-year at our current customers *and are well positioned for 2019.*" (Emphasis in original.) | |

Plaintiffs allege on February 15, 2019 during the Toy Fair Analyst meeting, "Defendants disclosed, for the first time, that sales of Barbie and Hot Wheels, which the Company had just touted *the week before*, would slow down dramatically in 2019." (ACAC ¶ 11.)[13] The ACAC therefore alleges Defendants' February 7, 2019 statements/omissions regarding Barbie and Hot Wheels were false/misleading because "Defendants were aware that Barbie and Hot Wheels sales momentum was going to slow down in 2019. Yet, Defendants misled the public by failing to disclose this fact while falsely claiming that the growth momentum of Barbie and Hot Wheels was going to carry over to 2019." (*Id.* ¶ 57; *see also id.* ¶ 66 (alleging Defendants' February 7, 2019 statements/omissions were false and/or misleading "they failed to disclose the adverse fact that the sales momentum of Barbie and Hot Wheels was slowing down in 2019").)

Contrary to Plaintiffs' contentions, Defendants' alleged February 7, 2019

---

[13] Defendants' actual statement regarding Barbie and Hot Wheels on February 15, 2019 during the Toy Fair Analyst meeting was: "This year, we expect continued growth in Barbie and Hot Wheels, though not at the same extent of 2018 levels . . .." (RJN, Ex. 8.)

14

statements do not contain any false or misleading statements regarding the expected performance of the Barbie and Hot Wheels brands in 2019.  The only statement by Defendants regarding the 2019 year made on February 7, 2019 was: "We . . . are well positioned for 2019."  (*Id*. ¶¶ 51, 64.)  As Plaintiffs acknowledge in the ACAC:  Defendants "largely attributed the success [for the fourth quarter of 2018 and fiscal year] to . . . the strong momentum of Barbie and Hot Wheels. . . . *[T]hey did not provide specific guidance for 2019* . . .."  (*Id*. ¶ 48 (emphasis added).)[14]  Therefore, Defendants' statements on February 7, 2019 concerned the performance of the Barbie and Hot Wheels brands for 2018.

Accordingly, Plaintiffs fail to plead falsity with particularity as to Defendants' alleged statements/omission regarding Barbie and Hot Wheels.  *See* 15 U.S.C. § 78u-4(b)(1); *Metzler*, 540 F.3d at 1070.

### c.     Being "Well Positioned for 2019"

Plaintiffs allege that on February 7, 2019, "although [Defendants] did not provide specific guidance for 2019, Defendants touted their turnaround efforts and represented themselves to be 'well positioned for 2019.'"  (ACAC ¶ 48 (emphasis added).)  Even if Defendants' statement on February 7, 2019 that "We . .. are well positioned for 2019" could be considered a statement regarding the expected performance of the Barbie and Hot Wheel brands in 2019, that statement is corporate puffery upon which no reasonable investor would reply on, and therefore not actionable.[15]

---

[14] During the earnings conference call, Defendants stated they would disclose expectations for 2019 during the February 15, 2019 Toy Fair.  (*See* RJN, Ex. 7 at p.150, 152, 153.)

[15] *See In re Cutera Sec. Lit.*, 610 F.3d 1103, 1111 (9th Cir. 2010) ("mildly optimistic, subjective assessment[s]" do not "amount[] to a securities violation" reasoning that "[w]hen valuing corporations,[ ] investors do not rely on vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers," because "professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives"); *see also In re Syntex Corp. Sec. Litig.*, 855 F. Supp. 1086, 1095 (N.D. Cal. 1994), *aff'd*, 95 F.3d 922 (9th Cir. 1996); *In re Arrowhead Pharm., Inc. Sec. Litig.*, 2017 WL 5635422, at *4 (C.D. Cal. Sept. 20, 2017); *In re Cisco Sys. Inc. Sec. Litig.*, 2013 WL 1402788, at *13

\*   \*   \*

Because Plaintiffs fail to plead falsity with sufficient particularity, the Court dismisses Plaintiffs' Section 10(b) and Rule 10b-5 claim (first cause of action) with leave to amend.[16]

**C.     Section 20(a) of the Act (Second Cause of Action)**

Plaintiffs' second cause of action is for violation of Section 20(a) of the Act against Defendants Kreiz and Euteneuer.  Section 20(a) makes certain "controlling" individuals also liable for violations of Section 10(b) and its underlying regulations.  15 U.S.C. § 78t(a).  Thus, a defendant employee of a corporation who has violated the securities laws will be jointly and severally liable to the plaintiff if the plaintiff demonstrates (1) "a primary violation of federal securities law"; and (2) the defendant employee "exercised actual power or control over the primary violator." *Zucco Partners*, 552 F.3d at 990.  While this inquiry "is normally an intensely factual question, . . . Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation of Section 10(b)." *Id.* (internal quotations and citations omitted).

Defendants contend Plaintiffs' Section 20(a) claim fails because Plaintiffs do not allege "a primary securities violation."  Because the Court finds Plaintiffs fail to state a claim for violation of Section 10(b) and Rule 10b-5 because Plaintiffs do not plead falsity with sufficient particularity, the Court dismisses Plaintiffs' Section 20(a) claim with leave to amend.

/ / /

---

(N.D. Cal. Mar. 29, 2013); *Brodsky v. Yahoo! Inc.*, 592 F. Supp. 2d 1192, 1200 (N.D. Cal. 2008); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1077 (N.D. Cal. 2001).

[16] The Court does not reach the parties arguments regarding whether Plaintiffs plead scienter and loss causation with sufficient particularity. *See Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014) ("We can affirm the dismissal of Plaintiffs' (Section 10(b) and Rule 10b-5) claims . . . based solely on the Plaintiffs' failure to allege specific facts to show a material misstatement or omission.").

16

## IV.  CONCLUSION

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss the ACAC.  Plaintiffs may file an amended complaint no later than **February 4, 2020.**

**IT IS SO ORDERED.**

DATED:  January 21, 2020.

_____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

17